UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DAKOTA JAMES CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00158-JPH-DLP |
| | ) | |
| VIGO COUNTY SHERIFF'S | ) | |
| DEPARTMENT, | ) | |
| SWEENY-MCBRIDE Deputy, | ) | |
| PIRTLE Deputy, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dakota Caldwell, was stopped by Vigo County Sheriff's Deputies Christopher McBride and Jared Pirtle ("the Deputies") after they received a report that someone was impersonating a police officer. The Deputies investigated and searched Mr. Caldwell's vehicle. Mr. Caldwell brought this lawsuit *pro se* against the Deputies and the Vigo County Sheriff's Department, alleging that the stop and vehicle search violated the Fourth Amendment. Dkt. 1. Defendants have moved for summary judgment. Dkt. 39. Because the stop and search were reasonable under the Constitution, that motion is **GRANTED**.

## I.
## Facts and Background

Because Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Caldwell started working for Citizen's Security in 2017.  Dkt. 39-1 at 8 (Caldwell Dep.).  On October 8, 2018, he was assigned to work security at Prairie Creek Park.  *Id.* at 13.  He got to the park before his 10:45 p.m. shift and waited in his 2003 Ford Explorer—which had LED emergency-vehicle lights because it had previously been a police vehicle.  *Id.* at 11–18; dkt. 39-3 at 12 (McBride Dep.).  Mr. Caldwell had recently bought the vehicle and had not yet registered it.  Dkt. 39-1 at 13, 32 (Caldwell Dep).  He had with him a tactical vest, a bulletproof vest, handcuffs, a baton, pepper spray, and two firearms.  *Id.* at 17–18.

Shortly before 11:00 p.m., Vigo County Sheriff's Deputy Christopher McBride was dispatched to the park because of a 911 call reporting someone trying to impersonate a police officer in a vehicle with red and blue lights.  Dkt. 39-3 at 9 (McBride Dep.).  Deputy McBride found Mr. Caldwell, who said he was security and asked if he could help Deputy McBride.  Dkt. 39-1 at 18–20 (Caldwell Dep.); *see id.* at 5.  Deputy McBride responded that he was looking for a suspicious vehicle and was checking the area.  Dkt. 39-1 at 20 (Caldwell Dep.).  Mr. Caldwell gave Deputy McBride his driver's license and gun permit and told him that there were guns in the Explorer.  *Id.* at 22–23.  Deputy McBride then asked Mr. Caldwell to get out of the Explorer, and after he was out, asked if Mr. Caldwell would let him search the vehicle.  *Id.*  Mr. Caldwell declined, citing the Fourth Amendment.  *Id.* at 24.  Deputy McBride then began searching the vehicle.  *Id.* at 24, 26.

After a few minutes, Sheriff's Deputy Jared Pirtle arrived.  *Id.* at 26; *see* dkt. 39 at 1.  The deputies handcuffed Mr. Caldwell, telling him that his gun permit was invalid.  Dkt. 39-1 at 29 (Caldwell Dep.).  They then searched Mr. Caldwell, finding a badge that Mr. Caldwell bought when he worked for the Indiana Department of Correction.  *Id.* at 33–36.  They also tested the Explorer's red and blue lights and then told Mr. Caldwell they were impounding the vehicle until it was properly registered.  *Id.* at 30, 42.

Deputy Pirtle eventually determined that Mr. Caldwell's gun permit was valid.  Dkt. 39-2 at 13 (Pirtle Dep.).  A third sheriff's deputy, Chris Hawkins, then took Mr. Caldwell home and returned his guns to him.  *Id.* at 17; dkt. 39-1 at 43–44 (Caldwell Dep.).

Mr. Caldwell brought this action in April 2019, alleging that the Deputies violated his Fourth Amendment rights when they detained him and searched his vehicle.  *Id.*  The Deputies have moved for summary judgment.  Dkt. 39.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

The Deputies argue that they are entitled to summary judgment because it was reasonable under the Fourth Amendment for them to stop Mr. Caldwell and search his vehicle.  Dkt. 40 at 5.  Mr. Caldwell responds that there were "no crimes being committed," so there was no reason to stop him or remove him from his vehicle.  Dkt. 49.

### A. The Initial Stop

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  More than fifty years ago, in *Terry v. Ohio*, the Supreme Court explained that being stopped in public is "a serious intrusion upon the sanctity of the person" under the Fourth Amendment.  392 U.S. 1, 16–17 (1968).  Therefore, a brief seizure "for investigatory purposes" violates the Fourth Amendment unless law enforcement has "reasonable suspicion that criminal activity is afoot." *United States v. Reedy*, 989 F.3d 548, --- (7th Cir. 2021) (citing *Terry*, 392 U.S. at 21–22).  "Reasonable suspicion

must account for the totality of the circumstances and requires more than a hunch but less than probable cause." *Id.*

Here, Deputy McBride was dispatched to Prairie Creek Park because a 911 call reported that someone there was impersonating a police officer. Dkt. 39-3 at 9 (McBride Dep.). He found Mr. Caldwell's Explorer at the entrance to the park with no lights on, so he walked toward it and saw what "appeared to be the kind of lights that would be used in a regular emergency vehicle." *Id.* at 11–12; *see* dkt. 39-1 at 21 (Caldwell Dep.). As Deputy McBride approached the driver's side door, he saw a belt like a police officer would wear, with a holstered handgun. Dkt. 39-3 at 13 (McBride Dep); *see* dkt. 39-1 at 18 (Caldwell Dep.) ("[S]itting in my passenger seat . . . I had my duty belt, which was equipped with handcuffs, a baton, I believe a can of pepper spray, and my firearm."). Deputy McBride then asked Mr. Caldwell to get out of the Explorer Dkt. 39-3 at 16–17 (McBride Dep.); dkt. 39-1 at 22 (Caldwell Dep.).

That situation was "plenty suspicious," so Deputy McBride did not violate the Fourth Amendment when he continued to investigate and asked Mr. Caldwell to get out of the Explorer. *See Reedy*, 989 F.3d at ---. Indeed, in *Reedy*, an officer responded to a report of a homeless person who appeared to be living in an SUV parked behind a store. *Id.* at ---. The officer found Mr. Reedy in the SUV, "wearing a bulletproof vest and sitting in a car with a two-way walkie-talkie, crowbar, and open knife." *Id.* at ---. Those observations, with the officer's knowledge of Mr. Reedy's criminal history, provided "ample authority to direct Reedy to step out of his car and to subject him to further

questioning and investigation." *Id.* at ---.  The similar facts here gave the Deputies reasonable suspicion of criminal activity, allowing them to continue their investigation by stopping Mr. Caldwell.[1]

### B. The Vehicle Search

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam).  However, nearly a century ago, the Supreme Court recognized "an exception to this requirement for searches of vehicles." *Id.* (citing *Carroll v. United States*, 267 U.S. 132, 153 (1925)).  There is "no separate exigency requirement" to justify a warrantless search of a "readily mobile" vehicle; only probable cause is required. *Id.* at 467.  "Probable cause to search a vehicle exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020).

Impersonating a police officer is a crime in Indiana.  Ind. Code § 35-44.1-2-6; *see Ferree v. State*, 124 N.E.3d 109, 112–14 (Ind. Ct. App. 2019).  Here, the Deputies had received a report that someone at Prairie Creek Park was impersonating a police officer.  At the park, they found Mr. Caldwell sitting in an unlit Ford SUV that was equipped with police lights.  Dkt. 39-1 at 17–18 (Caldwell Dep.).  He had with him a duty belt with a holstered gun—but was

---

[1] Neither party argues about the constitutionality of the *Terry* stop's duration. However, in *Reedy*, a stop lasting "about 90 minutes" was "reasonable under the circumstances." 989 F.3d at ---.  Here, as in *Reedy*, "[n]othing about the timeline or sequence of events suggests delay by police." *Id.*

not a police officer. *Id.* Those facts gave the Deputies probable cause to believe that further evidence of impersonation would be found in Mr. Caldwell's vehicle. *See United States v. Kimberlin*, 805 F.2d 210, 228 (7th Cir. 1986). Therefore, any searches of the Explorer conducted during their investigation did not violate the Fourth Amendment. *See Kizart*, 967 F.3d at 695, 699.

The Deputies also inventory-searched Mr. Caldwell's Explorer after they decided to impound it. Dkt. 39-3 at 30 (McBride Dep.). A legal impoundment allows an inventory search, *see United States v. Cherry*, 436 F.3d 769, 775 (7th Cir. 2006), and Mr. Caldwell has not alleged that the impoundment violated the Fourth Amendment or responded to the Deputies' argument on this issue, dkt. 1; dkt. 40 at 8–9; dkt. 49. He has therefore abandoned any claim about the impoundment. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).[2]

### C. Vigo County Sheriff's Department

Mr. Caldwell also named the Vigo County Sheriff's Department as a defendant. But the Sheriff's Department is "effectively the county," so it can be liable only for its own constitutional violations under *Monell*. *See Oesterlin v. Cook Cty. Sheriff's Dept.*, 781 Fed. Appx. 517, 520 (7th Cir. 2019); *see Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). *Monell* liability requires an "underlying constitutional violation" that the Department caused through a policy, procedure, custom, or practice. *Horton v. Pobjecky*, 883 F.3d 941, 954

---

[2] Because there is no triable issue of fact about Fourth Amendment reasonableness, the Court does not address Defendants' argument that they are entitled to qualified immunity. *See* dkt. 40 at 9–10.

(7th Cir. 2018).  As explained above, Mr. Caldwell has not shown a constitutional violation; the Sheriff's Department is therefore entitled to summary judgment.  *See id.*

**IV.**
**Conclusion**

Defendants' motion for summary judgment is **GRANTED**.  Dkt. [39].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/26/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DAKOTA JAMES CALDWELL
3215 E. Park Ave.
Terre Haute, IN 47805

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com